## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ALLY FINANCIAL INC.,<br>            Plaintiff,<br>     v.<br>U.S. SPECIALTY INSURANCE<br>COMPANY,<br>            Defendant. | C.A. No. 22-64-MPT |

### MEMORANDUM ORDER

This breach of contract and declaratory judgment action has been removed from Delaware state court.[1]  Presently before the court are cross motions for judgment on the pleadings.[2]  The parties have consented to the jurisdiction of a U.S. Magistrate Judge.[3]

I.      **BACKGROUND**

A.      **The Nature and Stage of the Proceedings**

Plaintiff, Ally Financial, Inc. ("Plaintiff") has filed an amended complaint.[4]  In Count II of the amended complaint, Plaintiff alleges that  Defendant, U.S. Specialty Insurance Company ("Defendant") breached an insurance contract when it refused to pay on Plaintiff's insurance claim related to a 2021 settlement Plaintiff reached in class action litigation arising in Missouri state court.[5]  Defendant has answered the amended complaint and asserts the affirmative defense that "Plaintiff's claims are barred by the Prior Acts Exclusion."[6]  In Count I of the amended complaint, Plaintiff seeks declaratory

---

[1] D.I. 1.  Removal was proper under 28 U.S.C. §§ 1441 and 1446.

[2] D.I. 33; D.I. 38.  This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1441 and 1332.

[3] D.I. 19; D.I. 20.

[4] D.I. 25.

[5] *Id.* at ¶¶ 75--83.

[6] D.I. 28 at 17.

relief that, among other things, "[t]he Prior Acts Exclusion does not bar coverage under the U.S. Specialty Policy for Ally's Loss in connection with the Class Action."[7]

In the Scheduling Order, entered on August 3, 2022, the parties agreed to limit the scope of the present motions to the Prior Acts Exclusion and Defendant's second affirmative defense.[8]  Pursuant to that Order, Plaintiff moves under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings "as to Count I of the Amended Complaint and as to Defendant's Second Affirmative Defense in its Answer and Affirmative Defenses"[9]  Plaintiff requests declaratory relief that "[t]he Prior Acts Exclusion does not as a matter of law operate to allow U.S. Specialty to escape any of its $15 million of coverage."[10]  Defendant opposes the motion[11] and moves separately for judgment on the pleadings[12] "in favor of U.S. Specialty on Count I of the Amended Complaint and in favor of U.S. Specialty on its Second Affirmative Defense," which would result in denial of the declaratory relief and dismissal of the amended complaint.[13]

## B.    Statement of Facts

Plaintiff, formerly known as GMAC, provides auto financing and loan servicing services.[14]  Defendant is an insurance company.[15]  Plaintiff purchased a secondary insurance policy from Defendant "for the policy period December 15, 2016 to December 15, 2017."[16]  That insurance policy was based upon a primary insurance policy sold to

---

[7] D.I. 25 at ¶ 71.

[8] D.I. 30 at ¶ 5(a).

[9] D.I. 33.

[10] D.I. 33-1,  at .

[11] D.I. 39.

[12] D.I. 38.

[13] D.I. 38-1.

[14] *See generally* D.I. 35-1, Ex. 1.

[15] D.I. 25 at ¶ 8.

[16] *Id.* at ¶ 27.

Plaintiff for the same policy period by Federal Insurance Company (the "Policy").[17]  The interpretation of this primary Policy is at issue in this litigation.  One specific type of coverage in the Policy known as banker's professional liability insurance ("BPL").[18]

In March, 2008, Plaintiff financed a 2006 GMC Colorado pickup truck for Alberta Haskins and David Duncan ("Haskins and Duncan") in Missouri.[19]  In 2012, Plaintiff repossessed the truck.  In August and September, 2012, Plaintiff sent each of Haskins and Duncan various notice letters.[20]  The truck was sold on October 18, 2012, and Plaintiff sought to collect the deficiency.[21]  On March 30, 2016, Plaintiff filed a petition on deficiency in Missouri state court seeking money damages in the amount of $3,953.81 plus costs.[22]  The Amended Complaint alleges that in the Missouri litigation, in March 2017, Haskins and Duncan brought class action counterclaims against Plaintiff (the "Counterclaim").[23]  The Counterclaim alleged, among other things, that: (1) Plaintiff "has a company policy of requiring redemption by certified funds after [it] has repossessed collateral;"[24] (2) Plaintiff mailed deficient form presale notices "to each member of the classes;"[25] and (3) Plaintiff mailed deficient from post-sale notices to each class member.[26]

---

[17] *Id.* at ¶ 31.

[18] *Id.* at ¶ 34.

[19] D.I. 35-1, Ex. 2 at Ex. A.

[20] *Id.*, Ex. 2 at Exs. B1–B2.

[21] *Id.*, Ex. 2  at Ex. 1.

[22] *Id.*, Ex. 2.

[23] D.I. 25 at ¶ 12.

[24] D.I. 25-1, Ex. A1 at ¶ 40.

[25] *Id.* at ¶ 48.

[26] *Id.* at ¶ 49.

In an Order dated May 9, 2018, the Missouri court made several "conclusions of law" and certified the class action.[27]  The classes were "made up of more than 560,000 different customers and auto loans."[28]  The class action ultimately settled, with Plaintiff agreeing to pay damages and legal fees and to forgive more than $700 million in deficiency balances.[29]  Plaintiff alleges that as a result of the Missouri litigation, it suffered "**Loss**" under the Policy.[30]  Plaintiff also alleges that it notified Defendant of the litigation and sought coverage under the Policy but that Defendant refused to pay.[31]

## II.    LEGAL STANDARD

### A.    12(c)

Pursuant to Federal Rule of Civil Procedure 12, a party may move for judgment on the pleadings "[a]fter pleadings are closed – but early enough not to delay trial[.]"[32] When evaluating a motion for judgment on the pleadings, the Court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party."[33]

"The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference."[34]  "The issue is not

---

[27] D.I. 35-1, Ex. 3.

[28] D.I. 25 at ¶ 21.

[29] *Id.* at ¶ 24.

[30] *Id.* at ¶¶ 50–60.

[31] *Id.* at ¶¶ 61–67.

[32] Fed. R. Civ. P. 12(c).

[33] *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)).

[34] *Venetec Int'l, Inc. v. Nexus Med., LLC*, 541 F.Supp.2d 612, 617 (D. Del. 2008) (citing Wright and Miller, *5C Fed. Prac. & Proc. Civ.3d* § 1367 (1990)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (explaining that

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[35]  Ultimately, a motion for judgment on the pleadings can be granted "only if no relief could be afforded under any set of facts that could be proved."[36]

## III.    DISCUSSION

Plaintiff's opening brief contains a seven-paragraph summary of argument section.[37]  Although this section is supposed to contain "[a] summary of argument, setting forth in separately numbered paragraphs the legal propositions upon which the party relies,"[38] it does not do so.  In this section, Plaintiff makes three arguments, two of which are overlapping arguments relating to the Prior Acts Exclusion.  First, Plaintiff argues that its claim is covered by the policy.[39]  Second, Plaintiff contends "the Prior Acts Exclusion does not apply to [Plaintiff's] loss on any of the class-member claims that arose *after* the prior acts date."[40]  Third, Plaintiff maintains that, as a matter of law, Defendant "has the burden of demonstrating unequivocally that its construction of the exclusion is the only reasonable construction[,]" but that it "cannot meet that burden" and, as a result, Plaintiff "is entitled to a declaration that the Prior Acts Exclusion does not bar coverage[.]"[41]  In support Plaintiff presents 10 pages of argument that the Prior Acts Exclusion can only be interpreted in its favor.[42]  Likewise, Defendant opposes

---

any documents integral to pleadings may be considered in connection with Rule 12(c) motion).

[35] *Burlington Coat Factory*, 114 F.3d at 1420.

[36] *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

[37] D.I. 34 at 4, ¶ 1–5, ¶ 7.

[38] D. Del. LR 7.1.3(c)(1)(D).

[39] D.I. 34 at 15.

[40] *Id.* at 5, ¶ 5 (emphasis in original).

[41] *Id.* at 5, ¶ 6.

[42] *Id.* at 15–24.

Plaintiff's motion and moves separately, accompanied by 17 pages of argument that: (1) the Prior Acts Exclusion applies; (2) the Prior Acts Exclusion bars coverage; and (3) Plaintiff's claim does not fall within the Insuring Clause.[43]

The briefing on these cross-motions is unhelpful.  Although the parties have stated clearly the relief they seek[44] and have exhausted the universe of arguments to support their respective positions, neither Plaintiff nor Defendant has stated "with particularity the grounds for seeking the order."[45]  That is, neither party has made an effort to link an argument to the standards underlying Rule 12, such as to present the facts in the light most favorable to the nonmoving party and to draw all reasonable inferences in favor of the nonmoving party.  Of course, to do that would necessitate briefing that identifies *which* argument relates to *which* cross-motion.  Rather than following those strictures, the parties appear to have agreed that it would serve their interests best to dump a dozen or so arguments on the court for this judge to sort through under the guise of a motion for judgment on the pleadings.

### A.    Defendant's motion

On its face, Defendant's brief contests facts as alleged in the Amended Complaint.  For example, Plaintiff alleges that the Missouri litigation was a class action and that the classes were "made up of more than 560,000 customers and auto loans."[46]  The Missouri court addressed the unique nature of each class member's claim, including the applicable statute of limitations associated with the dates on which presale notices were sent to class members in different states.[47]  Plaintiff alleges that "each of the individual class member claims at issue in the Class Action involved one or more

---

[43] D.I. 39 at 11–28.

[44] Fed. R. Civ. P. 7(b)(1)(C); *see also* D.I. 33-1; D.I. 38-1.

[45] Fed. R. Civ. P. 7(b)(1)(B).

[46] D.I. 25 at ¶ 21.

[47] *Id.* at ¶¶ 15–20.

alleged **BPL Wrongful Acts** that occurred at some point during a multi-year period."[48]
Defendant argues counterfactually that the class action Counterclaim in the Missouri
litigation must be a "single claim."[49]  Since this argument contradicts the facts as alleged
in the Amended Complaint, judgment on the pleadings is inappropriate.[50]

### B.     Plaintiff's motion

Under Federal Rule of Civil Procedure 8(c)(1), Defendant affirmatively states the
defense that "Plaintiff's claims are barred by the Prior Acts Exclusion in Endorsement
No. 2 of the Federal Primary Policy, to which the U.S. Specialty Policy follows form."[51]
In its motion for judgment on the pleadings, pursuant to Rule 12(c), Plaintiff seeks a
declaration "that the Prior Acts Exclusion does not bar coverage" on the basis that
Plaintiff "cannot meet" its burden to show that Plaintiff's insurance claim is excluded
from coverage.[52]  This is the defense of failure to state a claim upon which relief can be

---

[48] *Id.* at ¶ 54.

[49] *E.g.,* D.I. 39 at 11–24 (arguing that the Counterclaim is a "single claim").

[50] Defendant's briefing is incoherent and confusing.  For example, the 8 different
arguments identified in the "Summary of Argument" section are not clearly identified in
the briefing.  D.I. 39 at 2–4.  In addition, several of the arguments under Section A,
which argues that the class action claims are a "single claim," are based upon the
alternative premise that there are multiple claims and multiple wrongful acts.  *Id.* at 20–
24.  Another argument is barred by agreement of the parties.  *Id.* at 25–26 (retention
limits).  Yet another argument is also barred by agreement of the parties.  *Id.* at 28
(arguing that the counterclaim does not fall within the insuring clause).

[51] D.I. 28 at 17.

[52] D.I. 34 at 5, ¶ 6.  Although under Delaware law "an insurer's burden is to establish
that a claim is specifically excluded," *RSUI Indem. Co. v. Murdock*, 248 A.3d 887, 906
(Del. 2021) (quotation marks and citation omitted), the cited case law does not state the
standards cited by Plaintiff at D.I. 34 at 5, ¶ 6 ("U.S. Specialty, as a matter of law, has
the burden of demonstrating unequivocally that its construction of the exclusion is the
only reasonable construction.") and *id.* at 14 ("The insurance company bears the burden
of proof on all coverage exclusions regardless of where within the policy the exclusion
appears.).

granted.  Under Rule 12(h)(2), a party may raise this defense in a motion for judgment on the pleadings, which is the case here.[53]

    "Generally speaking, it is inappropriate to consider an affirmative defense . . . under Rule 12(c)."[54]  "However, on a Rule 12(b)(6) or Rule 12(c) motion, a district court may take into consideration an affirmative defense if such a defense 'presents an insuperable barrier to recovery by the plaintiff.'"[55]  That is, the defect associated with any affirmative defense raised under Rule 8(c) must be "apparent on the face of the complaint[.]"[56]  Absent that facial deficiency, in this court "a Rule 12(c) motion [challenging an affirmative defense] is treated 'as one to strike Defendant's affirmative defenses pursuant to Rule 12(f).'"[57]

    Here, Plaintiff maintains that Defendant's second affirmative defense is deficient, because Defendant will not be able to meet its burden to prove that the affirmative defense applies.  This is not based on a deficiency apparent on the face of the amended complaint but is instead based on argument construing various contract terms.[58]  Therefore, the court will treat Plaintiff's 12(c) motion as a motion to strike.

---

[53] In the Third Circuit, similar motions are evaluated under the standards governing motions under Rule 12(b)(6).  *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991).

[54] *In re Nat'l Pool Const., Inc.*, No. CIV. 12-2157, 2012 WL 3277107, at *2 (D.N.J. Aug. 9, 2012).

[55] *Id.* (quoting *Flight Sys. v. Elec. Data Sys. Corp.,* 112 F.3d 124, 127 (3d Cir.1997)).

[56] *Rycoline Prod., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997) (citing *Bethel v. Jendoco Constr. Corp.,* 570 F.2d 1168, 1174 (3d Cir.1978).

[57] *Allergan USA, Inc. v. Sun Pharm. Indus. Ltd.*, No. CV 19-1727-RGA, 2022 WL 16921800, at *2 (D. Del. Nov. 14, 2022) (quoting *Intell. Ventures I LLC v. Symantec Corp.*, No. CV 13-440-LPS, 2014 WL 4773954, at *1 (D. Del. Sept. 24, 2014)).

[58] D.I. 34 at 13–24.

### 1.    Motion to Strike

Pursuant to Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[59]  "As a general matter, motions to strike under Rule 12(f) are disfavored."[60]  When considering a motion to strike an affirmative defense, "the court should construe all facts in favor of the nonmoving party"[61] and should not grant the motion "unless the insufficiency of the defense is clearly apparent."[62]  The underpinning of this principle rests on a concern that a court should restrain from evaluating the merits of a defense where . . . the factual background for a case is largely undeveloped."[63]  "Even where there is no factual dispute, several courts have noted that a 'motion to strike for insufficiency was never intended to furnish an opportunity for the determination of disputed and substantial questions of law.'"[64]

Plaintiff avers that Defendant has the burden to prove that the Prior Acts Exclusion applies.[65]  This is generally accepted to be a burden for a later stage in the proceeding and not an expectation for an affirmative defense.  Defendant identifies eight arguments in opposition to Plaintiff's motion and in support of its cross motion.[66]  The sheer number of Defendant's arguments suggests a dispute over many substantial

---

[59] Fed. R. Civ. P. 12(f).

[60] *Fesnak & Assocs., LLP v. U.S. Bank Nat. Ass'n*, 722 F. Supp. 2d 496, 502 (D. Del. 2010) (citation omitted).

[61] *Noramco LLC v. Dishman USA, Inc.*, No. CV 21-1696-WCB, 2022 WL 2817876, at *5 (D. Del. July 19, 2022).

[62] *Cipollone v. Liggett Grp., Inc.*, 789 F.2d 181, 188 (3d Cir. 1986) (quotation marks and citation omitted).

[63] *Id.*

[64] *Symbol Techs., Inc. v. Aruba Networks, Inc.*, 609 F. Supp. 2d 353, 356 n.1 (D. Del. 2009) (quoting *Salcer v. Envicon Equities, Corp.*, 744 F.2d 935, 939 (2d Cir.1984), *rev'd on other grounds,* 478 U.S. 1015 (1986)).

[65] D.I. 34 at 5, 14, 15, 17.

[66] *E.g.*, D.I. 39 at 3–4 ("Summary of Argument").

questions of law that would be inappropriate for the court to address on a motion to strike.[67]  However, once the Prior Acts Exclusion is read in the context of the entire Policy, the insufficiency of Defendant's defense is clearly apparent.

### 2.    The Policy

This is litigation over an insurance policy.  Defendant maintains that it is not obligated to pay out on the Policy based upon the "Prior Acts Exclusion" Endorsement.[68] Plaintiff identifies the operative provisions of this policy in the Amended Complaint.[69] Defendant's argument is based upon an interpretation of the facts in view of the Prior Acts Exclusion, but Defendant offers no interpretation of the Policy as a whole.[70]  The court addresses the Policy here.

The Policy covers various aspects of Plaintiff's businesses.  At issue in the Missouri litigation was Plaintiff's auto loan servicing business, which is covered in the policy under terms related to Banker's Professional Liability ("BPL").  Plaintiff alleges that it suffered "Loss" in defending that litigation and in the settlement that resulted from it.[71]

### (a)    The Insuring Clause

At the core of the Policy is the Insuring Clause.  The standard Insuring Clause, which appears in Section 1 of the Policy, has been replaced by an endorsement defining coverage associated with Plaintiff's specific lines of business.  As it relates to "BPL Services Liability Coverage," the Policy states:

> The Company shall pay, on behalf of an **Insured**, **Loss** on account of any **BPL Claim** first made against such **Insured**

---

[67] *Id*.  Defendant makes no such argument.  *Id*.

[68] D.I. 25-1, Ex. F.

[69] D.I. 25 at ¶¶ 27–49.

[70] D.I. 39 at 11–14.

[71] D.I. 25 at ¶¶ 50–60.

> during the **Policy Period** or, if exercised, during the
> Extended Reporting Period, for a **BPL Wrongful Act**
> committed by an **Insured** or any person for whose acts the
> **Insured** is legally liable solely while performing **BPL**
> **Services**, including failure to perform **BPL Services**.[72]

Of note, this clause limits coverage to "any **BPL Claim** first made against such **Insured**
during the **Policy Period**."[73]  The "**Policy Period**" is defined to be from December 15,
2016 to December 15, 2017.[74]  The Amended Complaint alleges that in March 2017,
Haskins and Duncan, the defendants in the Missouri litigation, brought the class action
Counterclaim against Plaintiff.[75]

Among other allegations, the Counterclaim "sought relief against Ally for alleged
violations of the Uniform Commercial Code . . . for allegedly failing to provide presale
and post-sale notices to borrowers before and after their personal property (such as, a
motor vehicle) was repossessed and sold in the form and manner required under the
UCC[.]"[76]

### (i)     Loss associated with the Counterclaim in the Missouri litigation falls within the Insuring Clause

Under the Policy, "**Loss** means the amount that an Insured becomes legally
obligated to pay on account of any covered **Claim**[.]"[77]  In the context of the loan
servicing that Plaintiff provides, "**Claim** means any **BPL Claim**[.]"[78]  The Policy states
that "**BPL Claim** means:  a. a written demand for monetary damages or non-monetary
relief; b. a civil proceeding commenced by the service of a complaint or similar pleading

---

[72] D.I. 25-1, Ex. F, Endorsement No. 15 at Page 1, ¶ 1 (emphasis in original).  The
Policy identifies defined terms in bold, a practice that the court will also follow.

[73] *Id.*

[74] D.I. 25-1, Ex. F, Declarations at Page 1 of 17.

[75] D.I. 25 at ¶ 12.

[76] *Id.*

[77] D.I. 25-1, Ex. F, Endorsement No. 19 at ¶ 4.

[78] *Id.* at ¶ 2.

. . . , brought by or on behalf of a **BPL Customer** against an **Insured** for a **BPL Wrongful Act**, including any appeal therefrom[.]"[79]

"**BPL Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty that: a. is committed, attempted, or allegedly committed or attempted, before or during the **Policy Period** by an **Insured** or any person for whose acts the Insured is legally liable; and b. arises solely from the performance of **BPL Services**."[80]  Specifically, "**BPL Services** means those services, including Loan Servicing, performed or required to be performed by an **Insured** for or on behalf of a **BPL Customer**[.]"[81]

In view of the facts as alleged in the Amended Complaint, the Counterclaim filed in the Missouri litigation in March 2017 is a "civil proceeding commenced by the service of a complaint or similar pleading" brought by two BPL Customers, Haskins and Duncan, on behalf of other class members (who are also BPL Customers) against Plaintiff (the "Insured") for a BPL Wrongful Act, which includes alleged deficiencies in the presale and post-sale notices Plaintiff sent to consumers.  Therefore, the Counterclaim is a "**BPL Claim**" according to the language of the Policy.  The Amended Complaint also alleges that Plaintiff suffered losses in the form of damages, compensatory damages, fees and costs, and defense costs.[82]  This is sufficient to be a "**Loss**" under the policy.  Because the Counterclaim was filed in March 2017, which lies between December 2016 and December 2017, it is within the "Policy Period."  Taken together, the Amended Complaint alleges that Plaintiff suffered "**Loss** on account of any

---

[79] *Id.*, Endorsement No. 15 at Page 2, ¶ 2.

[80] *Id.* at Page 3, ¶ 2.

[81] *Id.* at Page 161 of 194–162 of 194.

[82] D.I. 25 at ¶¶ 13–25.

**BPL Claim** first made against such Insured during the **Policy Period**," thereby satisfying the conditions of the Insuring Clause.[83]

> **(b)   Loss**

The parties disagree as to how the Policy addresses class actions, specifically whether there must be a single "Wrongful Act" or if multiple wrongful acts are covered by the policy.[84]   Although Defendant argues that Plaintiff "does not explain how a single civil proceeding can allege more than one BPL Claim as defined in the [] Policy[,]"[85] the Policy is—in fact—far simpler than Defendant makes it out to be.[86]

First, the Policy states that "**Loss** means *the amount* an **Insured** becomes legally obligated to pay on account of any covered **Claim**[.]"[87]   Therefore, "**Loss**" is an "amount" of money damages and other obligations.

---

[83] Defendant attaches a declaration and additional documents to its Opening/Answering brief, D.I. 40; D.I. 40-1, Exs. A–C, and argues that the class action Counterclaim in the Missouri litigation does not fall within the Insuring Clause, because the defendants in that litigation, Haskell and Duncan, individually asserted a similar counterclaim in 2016. D.I. 39 at 28.  This is of no import, because Defendant never actually pleaded an affirmative defense in this regard, *see generally* D.I. 28, and as Defendant observes this entire argument "it is extraneous to the question of whether the Prior Acts Exclusion applies to bar coverage."  D.I. 39 at 28.  Despite this amazingly self-aware statement, Defendant saw fit to include this argument in a brief limited to the Prior Acts Exclusion. *See* Del. Rules of Prof'l Conduct 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.").

[84] *E.g.*, D.I. 38 at 11–24 (Defendant's opening brief).

[85] *Id.* at 16.

[86] For example, Defendant's briefing contains more than a dozen averments that the Prior Acts Exclusion "bars coverage" for "claims."  D.I. 39 at 1–4, 11, 12, 14, 16, 20–22, 26.  This misrepresents the plain language of the exclusion, which states "[t]he Company shall not be liable for **Loss** on account of any **Claim** based upon, arising from, or in consequence of" several factors.  D.I. 25-1, Ex. F, Endorsement No. 2 at Page 1.  By removing the "**Loss**" term central to many relevant provisions of the Policy, Defendant confuses the issue.

[87] D.I. 25-1, Ex. F, Endorsement No. 19 at ¶ 4 (emphasis added).

Second, the Policy aggregates multiple customer claims under "**Loss**."

Specifically, Section 7 of the Policy is entitled "Limits of Liability, Retention Amount and

Coinsurance."  Paragraph (a) states:

> All **Loss** arising out of the same **Wrongful Act** and all
> **Related Claims** of the **Insured** shall be deemed one **Loss**,
> and such **Loss** shall be deemed to have originated in the
> earliest **Policy Period** in which a **Claim** is first made against
> the **Insured** alleging such **Wrongful Act** or **Related
> Claims**.[88]

"**Related Claims** means all **Claims** based upon, arising from, or in consequence of the

same or related facts, circumstances, situations, transactions or events or the same or

related series of facts, circumstances, situations, transactions or events."[89]  Therefore,

"all **Loss**" arising out of "the same **Wrongful Act** and all **Related Claims**," which arise

from "the same or related facts, circumstances, situations, transactions or events" "shall

be deemed one **Loss**[.]"

To be sure, the Policy does not distinguish whether there is one "**BPL Claim**"

arising from a single "**BPL Wrongful Act**," multiple "**BPL Claims**" arising from "the

same **[BPL] Wrongful Act**," or "**Related [BPL] Claims**" arising from "the same or

related facts, circumstances, situations, transactions or events[.]"  The Policy clearly

states that all of these fact patterns are, "one **Loss**."

The operative portion of this clause is that the "**Loss**" is "deemed to have

originated in the earliest **Policy Period** in which a **[BPL] Claim** is first made against the

**Insured**[.]"  That is under the facts of this case, when a "**BPL Customer**" makes "a

written demand for monetary damages or non-monetary relief" or initiates "a civil

proceeding commenced by the service of a complaint or similar pleading[.]"[90]

Essentially, the "**BPL Customer**," and not the "**Insured**," selects the "**Policy Period**" in

---

[88] *Id.*, § 7 at page 11 of 17.

[89] *Id.*, § 2 at page 6 of 17.

[90] *Id.*, Endorsement No. 15 at Page 2, ¶ 2.

which the "**Loss**" is incurred, regardless of when the damages are ultimately paid.  This clause serves several purposes:  to limit the "**Loss**" (and the insurance company's liability) to a single "**Policy Period**," to prevent the "**Insured**" from filing multiple claims in successive "**Policy Periods**," and to limit disputes (such as the instant motions) over whether there are sufficient claims to meet the retention amounts.  In context, this clause benefits both the "**Insured**" and the insurance "**Company**."

> **(i)** **One class member's claim is a "BPL Claim" and the remaining class member claims are "Related Claims" under the Policy**

The Amended Complaint alleges that the class action Counterclaim in the Missouri litigation was first presented to Plaintiff in March 2017,[91] which was during the "**Policy Period**" of December 15, 2016 to December 15, 2017.[92]  Plaintiff alleges that "[t]he Class action meets the definition of a **BPL Claim**, as it was brought by a **BPL Customer** against an **Insured** for an alleged **BPL Wrongful Act**, as these terms are defined by the Federal Primary Policy."[93]  In addition, Plaintiff alleges, "[t]he class member data used by the settlement administrator to administer the Class Action Settlement demonstrates that each of the individual class member claims at issue in the Class Action involved one or more alleged **BPL Wrongful Acts** that occurred at some point during a multi-year period."[94]  The class action Counterclaim in the Missouri litigation alleged that:  (1) "[Plaintiff] Ally mailed Defendants and many other consumers a presale notice, which did not comply with the Uniform Commercial Code ("UCC")

---

[91] D.I. 25 at ¶ 12.

[92] *Id.* at ¶¶ 27, 38.

[93] *Id.* at ¶ 50.

[94] *Id.* at ¶ 54.

adopted by each state[;]"[95] and (2) "[Plaintiff] mailed Defendants and numerous other consumers a post-sale notice, which did not comply with the UCC."[96]  The Counterclaim states that "Defendants sue for themselves and all other similarly situated consumers."[97]

In granting class certification, the Missouri court concluded, as a matter of law, that the class and Counterclaim satisfied the requirements under Missouri law to certify a class action.[98]  For example, the Missouri court concluded that the Counterclaimants had met the commonality requirement, reasoning that "the common issue identified by Counterclaimants are based on form documents generated by Ally, which do not vary in any material way (each presale notice restricts redemption payments to certain methods outlined in the presale notice despite the contract containing no such restriction)."[99]  The Missouri court acknowledged the existence of "individual issues, fancied or real" that are unique to the individual class members, but concluded that "[t]he common questions of law and fact that stem from language in form documents predominate over" these individual issues.[100]

The class certification was necessary, because each "**BPL Customer**" has at least one unique "**BPL Claim**" arising out of the presale and post-sale notices, each of which contains information unique to the customer, loan, vehicle, deficiency amount, and so forth.[101]  Since these presale and post-sale notices were sent at different times, the Counterclaim essentially alleges that there are two "**BPL Wrongful Acts**" for each

---

[95] D.I. 25-1, Ex. A1 at ¶ 2.  Plaintiff attached to the Amended Complaint two documents labeled "Exhibit A" and two documents labeled "Exhibit B"—the court designates these as Exhibit A1, Exhibit A2, Exhibit B1, and Exhibit B2.

[96] *Id.* at ¶ 4.

[97] *Id.* at ¶ 6.

[98] *See generally* D.I. 35-1, Ex. 3.

[99] *Id.* at 3–4.

[100] *Id.* at 5.

[101] *See, e.g.*, D.I. 35-1, Ex. 2 at Ex. B2 (September 20, 2012 presale notice for Haskins and Duncan).

"**BPL Customer**."  As the Amended Complaint alleges, the Missouri court addressed the statutes of limitation relevant to the class members based upon the state in which each class member was resident when he or she received a deficient presale notice.[102] Based upon the allegations in the Amended Complaint, and the record of the Missouri litigation, at least one of the deficient presale or post-sale notices sent to a class member constitutes a "**BPL Wrongful Act**" for which a class member's  (or "**BPL Customer's**") claim constitutes a "**BPL Claim**."  The other claims within the class action also rely on—for each class member—deficient presale notices[103] and deficient post-sale notices.[104]  These other claims are "based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events"[105] and satisfy the requirements to be "**Related Claims**" under the terms of the Policy.

(ii)    **"Loss" associated with the Counterclaim in the Missouri litigation is "one Loss" within the context of the Policy**

Since the "**Loss**" alleged in the Amended Complaint is associated with a "**BPL Wrongful Act**" (or "**Wrongful Act**") and "**Related Claims**" alleged in the Counterclaim in the Missouri litigation, it is "one **Loss**" for purposes of the Policy.

(c)    **Allocation of Loss and Exclusions**

With "**Loss**" consolidated into "one **Loss**" for purposes of the Policy, the Policy contains an "Allocation" provision, which states:

> If both **Loss** covered by this Policy and loss not covered by this Policy are incurred, either because a **Claim** against an **Insured** includes both covered and noncovered matters or

---

[102] D.I. 25 at ¶ 20.

[103] D.I. 25-1, Ex. A1 at ¶ 2.

[104] *Id.* at ¶ 4.

[105] *Id.*, Ex. F, § 2 at Page 6 of 17.

> because a **Claim** is made against both an **Insured** and
> others, then the **Insured** and the Company shall allocate
> such amount between covered **Loss** and noncovered loss
> based upon the relative legal and financial exposures of the
> parties to covered and noncovered matters and, in the event
> of a settlement in such **Claim**, also based upon the relative
> benefits to the parties from such settlement. The Company
> shall not be liable under this Policy for the portion of such
> amount allocated to noncovered loss.
>
> . . . .[106]

In the Amended Complaint, Plaintiff states that it "does not contend that any allocation is

required or necessary[,]" because it alleges that its **Defense Costs** "would extend to

the full limits of the U.S. Specialty Policy."[107]

The scope of "noncovered matters" is found in the Policy in two primary

locations.  First, in the "Exclusions" section, the Policy states "[t]he **Company** shall not

be liable for **Loss** on account of any **Claim**" and outlines various circumstances, such

as "**Loss**" covered under policies prior to the December 15, 2016 inception date or

arising from any of various proceedings or judgments prior to December 15, 2013.[108]

Second, Endorsement No. 2, the "Prior Acts Exclusion" states the following:

> The Company shall not be liable for **Loss** on account of any
> **Claim** based upon, arising from, or in consequence of:
>
> (1) any **Wrongful Act** committed, attempted, or allegedly
> committed or attempted prior to December 15, 2013; or
>
> (2) any **Wrongful Act** committed, attempted, or allegedly
> committed or attempted subsequent to December 15, 2013
> that is causally connected to a **Wrongful Act** committed,
> attempted, or allegedly committed or attempted prior to
> December 15, 2013.[109]

---

[106] *Id.*, § 10 at Page 13 of 17.

[107] D.I. 25 at ¶ 73.

[108] D.I. 25-1, Ex. F, § 3a–b at Page 6 of 17.

[109] *Id.*, Endorsement No. 2 at Page 1.

The Amended Complaint alleges that, based upon data from class members in the settlement of the Missouri litigation, "more than 80% of the alleged **BPL Wrongful Acts** for the more than 560,000 class members at issue occurred *after* December 15, 2013, the cut-off date referenced in the Prior Acts Exclusion."[110]  Therefore, the Amended Complaint alleges, the Prior Acts Exclusion "does not bar coverage" because "the exclusion by its terms does not apply to any class member claims alleging **BPL Wrongful Acts** allegedly taking place after December 15, 2013."[111]

> (i)   **"Loss" associated with the Counterclaims alleging BPL Wrongful Acts subsequent to December 15, 2013 is not excluded under the Policy**

The court agrees with the interpretation of the Prior Acts exclusion in the Amended Complaint.  In the class action litigation, the Missouri court addressed in detail the question of the dates when statutes of limitations in various states barred recovery based upon the relevant dates of the alleged "**BPL Wrongful Acts**" associated with class claimants.[112]  Although the Amended Complaint acknowledges that Defendant is not liable for "**Loss**" associated with the class action claims where the alleged "**BPL Wrongful Acts**" occurred prior to December 15, 2013, it alleges that no "allocation is required or necessary," because "even if allocation were to be required, U.S. Specialty's coverage obligation would extend to the full limits of liability of the U.S. Specialty Policy."[113]

---

[110] D.I. 25 at ¶ 54; *see also* D.I. 35-1, Ex. 4 (native file data).  The court notes that the native filed data submitted contains a "SOLD_DATE" field, which is ostensibly the date on which the vehicle was sold and is not the earlier date on which the presale notice was sent.

[111] *Id.* at ¶¶ 55–56.

[112] *E.g.*, D.I. 25-1, Ex. D (Order on Disputed Statutes of Limitation).

[113] D.I. 25 at ¶¶ 72–73.

Since "**Loss**" is an "amount" that may be allocated between "covered and
noncovered matters," the "**Loss**" associated with Counterclaims based upon alleged
"**BPL Wrongful Acts**" that occurred after December 15, 2013 is not excluded from the
"**Loss**" amount by the Prior Acts Exclusion.

### 3.   Analysis

Defendant's brief repeats the same arguments over and over under multiple
headings.  These are essentially three arguments.  First, Defendant maintains that as a
matter of contract interpretation, the "clear and unambiguous language in the Prior Acts
Exclusion must be applied as written."[114]  Second, Defendant argues that the entire
class action Counterclaim in the Missouri litigation represents a single "Claim" that
"arose from the use of deficient form notices, which began before December 2013" and
is therefore "barred" by the Prior Acts Exclusion.[115]  Third, Defendant argues in the
alternative that, even if the Missouri Class Action comprises a multitude of "Claims,"
these Claims all derive in various ways from Wrongful Acts committed prior to
December 2013 and are also excluded.[116]

---

[114] D.I. 39 at 11.

[115] *Id.* at 11, 14–20.

[116] *Id.* at 3–4, ¶¶ 3–5.  Additionally, Defendant contends that "[i]f the Loss does not arise
out of the 'same Wrongful Act' or 'Related Claims' then the Loss as to each BPL Claim
and BPL Wrongful Act is counted separately, such that no one Loss exceeded the $25
million self-insured retention and [under Section 7 of the Policy] Ally never qualified for
coverage at all."  D.I. 39 at 26.  Defendant also argues that the Counterclaim does not
fall within the insuring clause.  *Id.* at 28.  The parties agreed to limit the scope of the
present motions to the Prior Acts Exclusion and Defendant's affirmative defense.  D.I.
30 at ¶ 5(a).  These arguments are beyond the scope designated in the Scheduling
Order; therefore, the court declines to consider them.

### (a)    The Policy is construed as a whole

Defendant's contention that the "Prior Acts Exclusion" be construed on its own is nonsensical.  Endorsement No. 2, the "Prior Acts Exclusion Endorsement"[117] is one of at least two "exclusion" clauses in the Policy.[118]  The arguments Defendant raises arise from construing the exclusion without consideration for the operation of the entire Policy.[119]  This tortured exercise is a waste of judicial resources.

### (b)    The plain language of the Policy does not support Defendant's "single claim" or "single wrongful act" theory

In Section A of its opening brief, Defendant argues that Plaintiff "instituted its policy and practice of informing customers that they could only redeem repossessed vehicles with certain forms of payment in 2003 and began using the offending form notices before December 2013."[120]  Therefore, Defendant contends, "[t]he Claim thus arises from [Plaintiff]'s improper policy and practice and resulting deficient form notices, a single Wrongful Act occurring before December 15, 2013, and is barred by the Prior Acts Exclusion."[121]  To be sure, Defendant argues that the hundreds of thousands of class member claims encompassed by the Counterclaim in the Missouri litigation are a single "Claim" or "BPL Claim" under the Policy,[122] because the alleged wrongful act was a single "policy and practice."[123]

Plaintiff responds that "[t]he Prior Acts Exclusion can only be triggered by a BPL Wrongful Act, which 'arises solely from the performance of BPL Services' done 'for or

---

[117] D.I. 25-1, Ex. F, Endorsement No. 2 at Page 1.

[118] *See supra* Section .III.B.2. (c)

[119] *E.g.*, D.I. 39 at 11–14.

[120] *Id.* at 20 (emphasis omitted).

[121] *Id.*

[122] *Id.* at 14–16.

[123] *Id.* at 20.

on behalf of a BPL Customer.'"[124]  "Unless the BPL Services were done for or on behalf of a BPL Customer, there is no BPL Wrongful Act."[125]  Based upon this, Plaintiff avers, a "'decision' to use a particular form does not meet the definition of the BPL Wrongful Act because there can be no BPL Wrongful Act until Ally actually sends a letter based on that form to a BPL Customer."[126]

Even if, as Defendant avers, Plaintiff made a single decision to use multiple "deficient form notices" at some point in time prior to December 2013, that decision is not sufficient to constitute a single "**Claim**" under the Policy, because the mere adoption of a corporate policy does not create a civil cause of action for any individual "**BPL Customer**."

The plain language of the Policy makes clear that a "**Claim**" means a "**BPL Claim**" and a "**Wrongful Act**" means a "**BPL Wrongful Act**."[127]  A "**BPL Claim** means . . . a civil proceeding commenced by the service of a complaint or similar pleading . . . brought or on behalf of a **BPL Customer** against an **Insured** for a **BPL Wrongful Act**[.]"[128]  A "**BPL Wrongful Act** . . . arises solely from the performance of **BPL Services**,"[129] which "means those services, including **Loan Servicing**, performed or required to be performed by an **Insured** for or on behalf of a **BPL Customer**[.]"[130]  In view of this language requiring the "**BPL Wrongful Act**" to arise solely from the performance of a service "for or on behalf of a **BPL Customer**," it is not possible to read the Policy so that a "**BPL Claim**" could arise from a single corporate decision to employ

---

[124] D.I. 41 at 7.

[125] *Id.*

[126] *Id.* at 7–8.

[127] D.I. 25-1, Ex. F, Endorsement No. 19 at ¶ 2.

[128] *Id.*, Endorsement No. 15 at ¶ 2.

[129] *Id.*

[130] *Id.*

"improper policy and practice."[131]  For instance, it was only when Plaintiff sent a deficient notice to a "**BPL Customer**" that the cause of action—that is the "**BPL Wrongful Act**"—for each class member arose.  Furthermore, each "**BPL Claim**" came into being with the filing of the Counterclaim in the Missouri litigation.  Defendant's attempts to call this alleged policy decision a "wrongful act" does not comport with the plain language of the Policy and cannot form the basis for a "**BPL Claim**."  Therefore, this alleged "single claim" cannot be the source of "**Loss**" that would be excluded under the Prior Acts Exclusion.

### (c)     Defendant's other argument also lack merit

Defendant argues that "even if the notices sent to each class member could be treated as separate 'Wrongful Acts,' the Counterclaim was commenced by Haskins and Duncan's filing of the Initial Counterclaim" and, therefore, "[t]he Claim at issue thus has its origins in, grows out of, or flows out of—or shares a 'meaningful linkage' with—the pre-December 2013 deficient notices that Haskins and Duncan received."[132]  Defendant argues that "but for" Haskell and Duncan's individual claim, there would be no class action.[133]  Plaintiff argues that its "purported pattern or practice of using deficient form notices satisfies the Related Claims definition without triggering the Prior Acts Exclusion."[134]  The court agrees with Plaintiff.  Defendant's argument is conclusory and lacks merit; it does not address the obvious "**Related Claims**" term.[135]  Moreover,

---

[131] D.I. 39 at 20.

[132] *Id*.

[133] *Id.* at 21.  There is no dispute that Haskins and Duncan's individual claim, which is based on "**BPL Wrongful Acts**" in 2012 (and therefore prior to December 15, 2013) is a noncovered matter and that Defendant "shall not be liable for **Loss** on account of any **[BPL] Claim** based upon, arising from, or in consequence of" these acts.  *See* D.I. 25-1, Ex. F, Endorsement No. 2 at Page 1.

[134] D.I. 41 at 20.

[135] D.I. 42 at 10 (asserting without explanation that the "Related Claim" provision "also triggers the Prior Acts Exclusion.").

Defendant imports language from case law into the Policy and construes the Prior Acts Exclusion without consideration of the other terms.[136]

Defendant also contends that the Prior Acts Exclusion applies, because the class member claims are "causally connected" to deficient form letters sent by Plaintiff prior to December 2013.[137]  Plaintiff responds that this argument is based upon Defendant's "single claim" assertion, which "depends on the faulty premise that [Plaintiff's] 'creation' of form notices before December 2013 can constitute a Wrongful Act."[138]  Moreover, as Plaintiff argues, the "sending of a letter to one customer did not lead it to send a letter to any other customer."[139]  Again, Defendant's argument here lacks merit.  As discussed above, the "policy" or decision to use specific form notices is not a "**BPL Wrongful Act**" and cannot provide a basis for "**Loss**" under the Policy.[140]  In addition, Defendant's conclusory argument offers little explanation of how Plaintiff's act of sending a deficient form notice to one "**BPL Customer**" brings about the act of sending a second deficient form notice to another "**BPL Customer**."[141]  Aside from the general policy of using deficient form notices, Defendant identifies no "causal connection" between these acts and fails to show how the Prior Acts Exclusion would apply on this basis.

---

[136] Defendant also argues that the other class member claims from prior to December 2013 also bar coverage for the same reason.  D.I. 39 at 21–22.  This argument is equally meritless.

[137] D.I. 39 at 22–24.

[138] D.I. 41 at 13.

[139] *Id*.

[140] *See supra* Section III.B.3. (b) .

[141] *Pro. Sols. Ins. Co. v. Mohrlang*, No. CIV.A. 07-CV-02481PA, 2009 WL 321706, at *11 (D. Colo. Feb. 10, 2009) ("[F]or two things to be causally connected, one must bring about the other.").

4.      **Conclusion**

Having considered Defendant's arguments in support of its affirmative defense that "Plaintiff's claims are barred by the Prior Acts Exclusion,"[142] and viewing the facts in the light most favorable to Defendant, the court concludes that this affirmative defense lacks merit and is insufficient.

IV.    **ORDER**

Therefore, IT IS ORDERED that:

1.      Plaintiff's motion to strike, D.I. 33, is GRANTED.  Defendant's second affirmative defense, D.I. 28 at 17, is stricken; and

2.      Defendant's motion for judgment on the pleadings, D.I. 38, is DENIED.

Dated:   March 22, 2023                              _____/s/ Mary Pat Thynge_____
                                                                        Chief U.S. Magistrate Judge

---

[142] D.I. 28 at 17.